UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| DIGNITY HEALTH,<br><br>            Plaintiff,<br><br>    v.<br><br>CALIFORNIA DEPARTMENT OF INDUSTRIAL RELATIONS, DIVISION OF LABOR STANDARDS ENFORCEMENT, et al.,<br><br>            Defendants. | Case No. 19-CV-06612-LHK<br><br>**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS**<br><br>Re: Dkt. No. 18 |

Plaintiff Dignity Health brings the instant lawsuit against Defendant California Department of Industrial Relations, Division of Labor Standards Enforcement, and Defendant Lilia Garcia-Brower. Before the Court is Defendants' motion to dismiss the complaint. Having considered the submissions of the parties, the relevant law, and the record in this case, the Court GRANTS Defendants' motion to dismiss the complaint.

## I.      BACKGROUND

### A.  Factual Background

Plaintiff is a non-profit corporation that operates hospitals throughout the United States. ECF No. 1 ("Compl.") ¶ 2. At some unspecified point in the past, Plaintiff entered into a

collective bargaining agreement with the California Nurses Association labor union (the "CBA"). *Id.* ¶ 7. The CBA governs numerous aspects of California Nurses Association members' employment with Plaintiff, such as wages, hours, and working conditions. *Id.* ¶ 8. The CBA consists of a master agreement as well as local agreements that govern employment at each of the covered hospitals operated by Plaintiff. *Id.* ¶ 9.

One of Plaintiff's hospitals covered by the CBA is Dominican Hospital, located in Santa Cruz. *Id.* Dominican Hospital employs certain employees on a per diem basis. *Id.* ¶ 10. Per diem employees work variable hours at Dominican Hospital, based on Dominican Hospital's needs and the employees' availability. *Id.* Plaintiff states that per diem employment is attractive to employees who have other jobs or who wish to avoid a fixed schedule. *Id.* Pursuant to the terms of the CBA, per diem employees receive a 25% to 40% per hour wage premium instead of benefits like health insurance, paid vacation, and sick leave days. *Id.* ¶ 11.

Sage Sewell is a per diem employee at Dominican Hospital, where Sewell has worked as a nurse from January 2014 to the present. *Id.* ¶ 10. Sewell's employment at Dominican Hospital is covered by the CBA. *Id.* ¶ 7. On February 2, 2018, Sewell filed a claim with the California Labor Commissioner's office, in which Sewell alleged Plaintiff denied Sewell sick leave pay during 2017 and 2018, in violation of California Labor Code § 245, *et seq*. *Id.* ¶ 12.

The CBA contains a grievance procedure, but Sewell did not utilize it. *Id.* ¶ 9. Instead, Sewell brought the claim against Plaintiff directly to the Office of the California Labor Commissioner. *Id.* ¶ 13. On October 1, 2019, after a hearing, the Office of the California Labor Commissioner held that Plaintiff unlawfully withheld sick leave pay from Sewell and ordered Plaintiff to pay Sewell $10,943.52 in sick leave pay, penalties, and interest (the "Sewell Order"). *Id.* ¶¶ 14, 38.

On October 15, 2019, Plaintiff then brought the instant case in United States District Court against Defendant California Department of Industrial Relations, Division of Labor Standards Enforcement ("DLSE"), and Defendant Lilia Garcia-Brower. *Id.* ¶¶ 3, 4. Defendant DLSE is the California entity that investigates and adjudicates wage claims under the California Labor Code.

*Id.* ¶ 3. Defendant Garcia-Brower is the Labor Commissioner for California and the head of

DLSE. *Id.* ¶ 4. Sewell is not a party to the instant case.

The following day, on October 16, 2019, Plaintiff also appealed the Sewell Order to the

Superior Court of the State of California. ECF No. 19-1 Ex. A.[1] That proceeding is ongoing.

**B. Procedural History**

As noted, on October 15, 2019, Plaintiff filed a complaint in United States District Court

against Defendant DLSE and Defendant Garcia-Brower. Compl. Plaintiff asserts only two causes

of action: (1) declaratory relief that the Sewell Order is preempted under Section 301 of the Labor

Management Relations Act ("LMRA"), 28 U.S.C. § 141; and (2) a claim under 42 U.S.C. § 1983

that Defendants abridged Plaintiff's right to collectively bargain under the National Labor

Relations Act ("NLRA"). *Id.* ¶¶ 35–42.

On November 18, 2019, Defendants filed the instant motion to dismiss. ECF No. 18.

Plaintiff filed an opposition on January 31, 2020, ECF No. 26, and Defendants filed a reply on

February 15, 2020, ECF No. 27.

## II. LEGAL STANDARD

### A. Motion to Dismiss Under Federal Rule of Civil Procedure 12(b)(6)

Rule 8(a)(2) of the Federal Rules of Civil Procedure requires a complaint to include "a

short and plain statement of the claim showing that the pleader is entitled to relief." A complaint

that fails to meet this standard may be dismissed pursuant to Federal Rule of Civil Procedure

12(b)(6). The U.S. Supreme Court has held that Rule 8(a) requires a plaintiff to plead "enough

facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550

U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content

that allows the court to draw the reasonable inference that the defendant is liable for the

---

[1] Defendants request that the Court take judicial notice of various filings associated with Sewell's pending state court claim, as well as publicly available legislative history concerning California labor law. The Court GRANTS Defendants' request for judicial notice. *See, e.g.*, *Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 n.6 (9th Cir. 2006) ("We may take judicial notice of court filings and other matters of public record.").

misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (internal quotation marks omitted). For purposes of ruling on a Rule 12(b)(6) motion, the Court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).

The Court, however, need not "assume the truth of legal conclusions merely because they are cast in the form of factual allegations." *Fayer v. Vaughn*, 649 F.3d 1061, 1064 (9th Cir. 2011) (per curiam) (internal quotation marks omitted). Mere "conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss." *Adams v. Johnson*, 355 F.3d 1179, 1183 (9th Cir. 2004).

### B. Leave to Amend

If the Court determines that a complaint should be dismissed, it must then decide whether to grant leave to amend. Under Rule 15(a) of the Federal Rules of Civil Procedure, leave to amend "shall be freely given when justice so requires," bearing in mind "the underlying purpose of Rule 15 to facilitate decisions on the merits, rather than on the pleadings or technicalities." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (alterations and internal quotation marks omitted). When dismissing a complaint for failure to state a claim, "a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Id.* at 1130 (internal quotation marks omitted). Accordingly, leave to amend generally shall be denied only if allowing amendment would unduly prejudice the opposing party, cause undue delay, or be futile, or if the moving party has acted in bad faith. *Leadsinger, Inc. v. BMG Music Publ'g*, 512 F.3d 522, 532 (9th Cir. 2008).

### III. DISCUSSION

In the instant motion to dismiss the complaint, Defendants make two categories of arguments. First, Defendants contend that Plaintiff's allegations suffer from various justiciability

4

issues.  Second, Defendants assert that Plaintiff has failed to state a claim under Federal Rule of Civil Procedure 12(b)(6).  The Court considers each category of arguments in turn.

### A. Justiciability Arguments

First, Defendants argue that Plaintiff's claims are not justiciable before the Court.  Specifically, Defendants argue that *Younger* abstention bars Plaintiff's claims, and that sovereign immunity precludes liability in certain respects in the instant case.

#### 1. *Younger* Abstention Does Not Apply

According to Defendants, the pending appeal of the Sewell Order in the Superior Court of the State of California represents an ongoing state proceeding that requires the Court to abstain from the instant case.  Mot. at 15. Plaintiff, on the other hand, argues that the appeal of the Sewell Order does not fall into the category of cases delineated by the United States Supreme Court as worthy of *Younger* abstention.  Opp'n at 3.  The Court agrees with Plaintiff.  *Younger* abstention is not warranted in the instant case.

*Younger* abstention "is a jurisprudential doctrine rooted in overlapping principles of equity, comity, and federalism."  *San Jose Silicon Valley Chamber of Commerce Political Action Comm. v. City of San Jose*, 546 F.3d 1087, 1091 (9th Cir. 2008).  *Younger* abstention bars federal relief when certain state proceedings are ongoing.  However, the United States Supreme Court has stressed that *Younger* abstention is only warranted with respect to "three types of [state] proceedings": (1) state criminal prosecutions; (2) certain types of civil enforcement actions; and (3) proceedings that "touch on a state court's ability to perform its judicial function."  *Sprint Comms., Inc. v. Jacobs*, 571 U.S. 69, 79 (2013).

According to Defendants, the ongoing appeal of the Sewell Order in the Superior Court of the State of California falls into the third category.  Mot. at 15.  However, as discussed, the Sewell Order consists of a determination by the Office of the California Labor Commissioner that Plaintiff violated California Labor Code § 245, *et seq.*, when Plaintiff failed to provide Sewell with sick leave pay.  Compl. ¶¶ 14, 38.

It is not clear how state review of this determination "touch[es] on a state court's ability to

perform its judicial function." *Sprint*, 571 U.S. at 79.  Defendants assert that "[i]n order to initiate its appeal of the [Sewell Order], the superior court required [Plaintiff] to post an appeal bond in the amount of the Labor Commissioner's award."  Reply at 3.  Defendants appear to contend that the existence of this requirement is independently sufficient to bring the appeal of the Sewell Order in the Superior Court of the State of California into the third *Sprint* category.  *Id.* (arguing that Plaintiff had to post a bond to appeal the Sewell Order in state court, and that "these procedures unquestionably 'touch on a state court's ability to perform its judicial function,' a justification for invocation of *Younger* abstention expressly recognized in *Sprint*").

Defendants' argument is flawed.  The Ninth Circuit has explained that the third *Sprint* category is "geared to ensuring that federal courts do not interfere in the procedures by which states administer their judicial system and ensure compliance with their judgments." *Rynearson v. Ferguson*, 903 F.3d 920, 926 (9th Cir. 2018).  The two leading United States Supreme Court cases on the subject provide guidance as to the scope of the category.  First, in *Juidice v. Vail*, 430 U.S. 327 (1977), the United States Supreme Court held that a federal suit that directly challenged a state's contempt procedure was barred by *Younger* abstention because "[t]he contempt power lies at the core of the administration of a State's judicial system." *Id.* at 335.  Later, in *Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1 (1987), the United States Supreme Court held that a federal suit that challenged the constitutionality of a state's lien and bond requirements was also barred by *Younger* abstention.  *Id.* at 14.  As the United States Supreme Court explained, "[n]ot only would federal injunctions in such cases interfere with the execution of state judgments, but they would do so on grounds that challenge the very process by which those judgments were obtained." *Id.*

According to the Ninth Circuit, the relevant question is whether the federal plaintiff "question[s] the *process* by which [state] courts compel compliance" with state orders. *Cook v. Harding*, 879 F.3d 1035, 1041 (9th Cir. 2018).  In the instant case, although Defendants cite the fact that Plaintiff was required to post an appeal bond in order to appeal the determination of the Office of the Labor Commissioner, Plaintiff does not actually *challenge* this appeal bond requirement.  Instead, Plaintiff challenges the underlying determination of the Office of the

6

California Labor Commissioner, which Plaintiff claims constitutes unlawful executive action. *See Rynearson v. Ferguson*, 903 F.3d 920, 927 (9th Cir. 2018) (explaining that a case fell outside the third *Sprint* category because the "challenge is solely to the constitutionality of a criminal statute," not "the validity of the state's protection orders or the procedures by which the state courts issue or enforce them"). The mere existence of the appeal bond requirement is not enough to bring the instant case within the sweep of the third *Sprint* category.

Defendants do not contend that the appeal of the Sewell Order falls within either of the other two *Sprint* categories. The first *Sprint* category only extends to criminal prosecutions, which makes it squarely inapplicable to the instant case. *Sprint*, 571 U.S. at 79 (outlining categories). As for the second *Sprint* category, the United States Supreme Court has explained that the category only extends to "civil enforcement proceedings [that] are generally 'akin to a criminal prosecution' in 'important respects.'" *Cook*, 879 F.3d at 1040 (quoting *Sprint*, 571 U.S. at 79). "In cases of this genre, a state actor is routinely a party to the state proceeding and often initiates the action." *Sprint*, 571 U.S. at 79. "Investigations are commonly involved, often culminating in the filing of a formal complaint or charges." *Id.* at 79–80. In the instant case, the state did not initiate the ongoing state proceeding. Instead, Sewell, a private party, brought the complaint against Plaintiff. Compl. ¶ 12. Although it appears that the Office of the California Labor Commissioner represents Sewell on the appeal of the Sewell Order, the state is not a party to the litigation. ECF No. 19-1 Ex. B. Further, Plaintiff does not allege that the state has undertaken any kind of investigation of Plaintiff. Thus, the pending appeal of the Sewell Order does not fall within the second *Sprint* category.

Because the pending appeal of the Sewell Order does not fall within the *Sprint* categories, *Younger* abstention is improper.[2] *See, e.g.*, *Cook*, 879 F.3d at 1041 (holding that case did not fall within the *Sprint* categories, and that "[t]he district court thus was wrong to abstain"). The Court

---

[2] Though the parties do not discuss it, the Court also notes that *Rooker-Feldman* abstention is similarly inapplicable, because the *Rooker-Feldman* "doctrine has no application to judicial review of executive action, including determinations made by a state administrative agency." *Verizon Md., Inc. v. Pub. Serv. Com'n of Md.*, 535 U.S. 635, 644 (2002).

Case No. 19-CV-06612-LHK
ORDER GRANTING DEFENDANTS' MOTION TO DISMISS

proceeds to consider the Defendants' invocation of sovereign immunity.

### 2. Sovereign Immunity Requires Dismissal of Defendant DLSE, But Not Defendant Garcia-Brower

Defendants argue that Eleventh Amendment sovereign immunity bars most of Plaintiff's complaint. Specifically, Defendants contend that Defendant DLSE is entitled to Eleventh Amendment immunity as to all of Plaintiff's complaint, and Defendant Garcia-Brower is entitled to Eleventh Amendment immunity as to Plaintiff's state law claims. Mot. at 18. Plaintiff responds that the *Ex parte Young* exception to the Eleventh Amendment entitles Plaintiff to proceed with the instant case. Opp'n at 7–8. The Court agrees with Defendants in part. The Eleventh Amendment bars Plaintiff's claims against Defendant DLSE, but the Eleventh Amendment does not bar Plaintiff's claims against Defendant Garcia-Brower.

The Eleventh Amendment dictates that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. The Eleventh Amendment's grant of immunity extends to lawsuits against states by their own citizens. *See, e.g.*, *Edelman v. Jordan*, 415 U.S. 651, 662–63 (1974) ("[T]his Court has consistently held that an unconsenting State is immune from suits brought in federal courts by her own citizens as well as by citizens of another State."). Moreover, Eleventh Amendment immunity extends to state agencies and state officers when the lawsuits against them are "in fact against the sovereign if the decree would operate against the latter." *Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 101 (1984).

In line with the foregoing principles, in the instant case, Defendant DLSE is a state agency that is entitled to Eleventh Amendment immunity. *See, e.g.*, *Brown v. Cal. Dep't of Corrs.*, 554 F.3d 747, 752 (9th Cir. 2009) (holding that California Department of Corrections and California Board of Prison Terms is entitled to Eleventh Amendment immunity); *see also Drevaleva v. Alameda Health Sys.*, No. 16-CV-7414-LB, 2017 WL 2462395, at *1 (N.D. Cal. June 7, 2017) (explaining that previous order "held that the [DLSE] was immune from suit under the Eleventh

Amendment to the U.S. Constitution"). Further, Plaintiff seeks to sue Defendant Garcia-Brower, a state actor, in her official capacity, which means that Defendant Garcia-Brower is also entitled to Eleventh Amendment immunity. *See, e.g.*, *Quintana v. California-Osha*, No. 12-CV-00822-LJO-SKO, 2012 WL 4433798, at *4 (E.D. Cal. Sept. 24, 2012) ("Moreover, to the extent Plaintiff is attempting to state a claim against the California Labor Commissioner, this claim is also precluded by the Eleventh Amendment.").

However, as to Defendant Garcia-Brower, Plaintiff invokes the long-established *Ex parte Young* exception to Eleventh Amendment immunity in response. Under the *Ex parte Young* exception, a plaintiff may sue a state official for prospective relief when the plaintiff alleges an ongoing violation of federal law. *See Va. Office for Protection and Advocacy v. Stewart*, 563 U.S. 247, 254–55 (2011) (outlining *Ex parte Young* exception to sovereign immunity). The *Ex parte Young* exception rests on the fiction that "[w]hen a federal court commands a state official to do nothing more than refrain from violating federal law, he is not the State for sovereign-immunity purposes." *Id.* at 255. The United States Supreme Court has explained that *Ex parte Young* requires the following "straightforward inquiry": does the complaint allege an ongoing violation of federal law, and does the complaint seek relief properly characterized as prospective? *Id.* at 255–56. If a court answers these questions in the affirmative, the *Ex parte Young* exception applies. *Id.*

Here, the Court finds that the *Ex parte Young* exception precludes Defendant Garcia-Brower's invocation of sovereign immunity. Plaintiff contends that the Sewell Order runs afoul of federal preemption under Section 301 of the LMRA. Compl. ¶ 37. Plaintiff also contends that the Sewell Order represents an unlawful interference with Plaintiff's right to engage in collective bargaining under 42 U.S.C. § 1983. *Id.* ¶ 40. Hence, Plaintiff alleges an ongoing violation of federal law. Plaintiff seeks a declaration that the Sewell Order is preempted, and an injunction against enforcement of the Sewell Order. *Id.* ¶¶ 37, 38, 42. This relief is properly characterized as prospective. *See, e.g.*, *Verizon*, 535 U.S. at 645–46 (explaining that prayer for injunctive and declaratory relief satisfies "straightforward inquiry").

9

Defendants assert that "[t]wo of the claims asserted in [the] complaint" arise from state law. Mot. at 18. According to Defendants, "the Eleventh Amendment precludes consideration of these state law claims, and the granting of any relief based on these state law claims, as to defendant Garcia-Brower." *Id.* Defendants misread the complaint. Although the complaint contains a lengthy description of the nature of California state labor law provisions, the complaint does not actually allege any state law claims against Defendants. As discussed, the complaint alleges only two causes of action: (1) declaratory relief that the Sewell Order is preempted under Section 301 of the LMRA, 28 U.S.C. § 141; and (2) a claim under 42 U.S.C. § 1983 that Defendants abridged Plaintiff's right to collective bargaining under the NLRA. *Id.* ¶¶ 35–42. Plaintiff confirmed as much in the opposition to Defendants' motion to dismiss the complaint. Opp'n at 1 ("[Plaintiff] therefore filed a two count Complaint: one, for declaratory relief that section 301 of the Labor Management Relation Act ('Section 301') preempts the State's interference; and, two, that such interference violates 42 USC section 1983 by abridging [Plaintiff's] right to collectively bargain."). Accordingly, *Ex parte Young* prevents Defendant Garcia-Brower's invocation of sovereign immunity.

Defendant DLSE is situated differently. As discussed, Defendant DLSE is a state agency, not a state officer. Numerous cases in the Ninth Circuit dictate that the *Ex parte Young* exception does not extend to state agencies. *See Shallowhorn v. Molina*, 572 F. App'x 545, 547 (9th Cir. 2014) (affirming dismissal of claims against state agency on the basis of sovereign immunity because *Ex parte Young* "is limited to claims against individual state officials and does not extend to agencies"); *see also Parkside Garden LLC v. Cal. Dept. of Soc. Servs.*, EDCV 15-43 JGB (KKx), 2015 WL 13546435, at *4 (C.D. Cal. Oct. 14, 2015) (explaining that *Ex parte Young* exception "does not permit suits to proceed directly against a state or state agency"). Beyond Plaintiff's *Ex parte Young* argument, which is inapplicable to Defendant DLSE, Plaintiff provides no reason why Defendant DLSE cannot assert Eleventh Amendment sovereign immunity. Opp'n at 7–8.

Accordingly, the Court GRANTS the motion to dismiss as to Defendant DLSE on the basis

10

of sovereign immunity. Because Defendant DLSE is entitled to sovereign immunity, leave to amend would be futile. *See, e.g.*, *United States v. Machinski*, No. 11-cv-01118-LB, 2016 WL 1640375, at *3 (N.D. Cal. Apr. 6, 2016) ("The doctrine of sovereign immunity accordingly bars Mr. Machinskis claims to the extent they sound in tort and the court dismisses his claims without leave to amend."). Thus, the Court dismisses Defendant DLSE with prejudice.

However, under the *Ex parte Young* exception outlined above, Defendant Garcia-Brower may not invoke sovereign immunity. Because the Court concludes that neither *Younger* abstention nor sovereign immunity require dismissal of the complaint as to Defendant Garcia-Brower, the Court must now turn to consider Defendants' arguments under Federal Rule of Civil Procedure 12(b)(6).[3]

## B. Rule 12(b)(6) Arguments

Defendants assert several arguments under Federal Rule of Civil Procedure 12(b)(6). As to Plaintiff's first claim, Defendants contend that Plaintiff does not state a claim for declaratory relief because the Sewell Order is not in fact preempted by Section 301 of the LMRA. As to Plaintiff's second claim, Defendants contend that the Sewell Order does not constitute an unlawful interference with Plaintiff's right to collectively bargain under the NLRA. The Court considers these arguments in turn.

### 1. Plaintiff Fails to State a Claim for Declaratory Relief for LMRA Preemption

Section 301 of the LMRA states:
Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

29 U.S.C. § 185(a). Although the provision does not expressly address preemption, the United States Supreme Court has held that the provision charges federal courts with a "mandate . . . to

---

[3] In the motion to dismiss the complaint, Defendants also initially asserted that the instant case is barred by the Anti-Injunction Act. Mot. at 16–17. Defendants candidly withdrew that argument in reply. Reply at 2 ("[W]e withdraw our argument that this action is barred by the Anti-Injunction Act.").

fashion a body of federal common law to be used to address disputes arising out of labor contracts." *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 209 (1985). "The Court subsequently held that this federal common law preempts the use of state contract law in CBA interpretation and enforcement." *Cramer v. Consol. Freightways, Inc.*, 255 F.3d 683, 689 (9th Cir. 2001) (en banc) (citing *Local 174, Teamsters of Am. v. Lucas Flour Co.*, 369 U.S. 95, 103–04 (1962)).

The Ninth Circuit "has articulated a two-step inquiry to analyze § 301 preemption of state law claims." *Kobold v. Good Samaritan Regional Med. Center*, 832 F.3d 1024, 1032 (9th Cir. 2016). At the first step, "a court must determine whether the asserted cause of action involves a right conferred upon an employee by virtue of state law, not by a CBA." *Id.* (internal quotation marks and alterations omitted). If the Court determines that the state law claim "exists independently of the CBA, it moves to the second step, asking whether the right is nevertheless substantially dependent on analysis of a collective-bargaining agreement." *Id.* (internal quotation marks omitted). The Ninth Circuit has referred to these two analytical steps as the two "*Burnside* factors." *Id.* at 1033–34.

Plaintiff's complaint asserts that Sewell's claim "necessarily requires interpretation of the CBA (including at least CBA Local Article 10)." Compl. ¶ 9. In other words, the complaint alleges that the Sewell Order is subject to LMRA preemption under the second *Burnside* factor. In opposition to the instant motion, Plaintiff also argues that Plaintiff "has pled Section 301 preemption under" the first *Burnside* factor. Opp'n at 10. Accordingly, the Court proceeds to analyze whether the complaint alleges LMRA preemption of the Sewell Order under either of the two *Burnside* factors.

### a. The Sewell Order Does Not Satisfy the First *Burnside* Factor

As discussed, Plaintiff argues that Plaintiff has sufficiently pleaded preemption of the Sewell Order under the first *Burnside* factor. Opp'n at 10 ("Dignity Health has pled Section 301 preemption under prong one of *Curtis*."). Defendants disagree. Defendants assert that Sewell's claim is "solely based on state law rights independent of any CBA," and thus fails to satisfy the first *Burnside* factor. Mot. at 20. The Court agrees with Defendants. Plaintiff fails to plead that

12

the Sewell Order is subject to LMRA preemption under the first *Burnside* factor.

The Ninth Circuit has explained that the first *Burnside* factor focuses on the *legal* character of a claim. *Kobold*, 832 F.3d at 1033. "Only if the claim is founded directly on rights created by a collective-bargaining agreement does § 301 preempt it." *Id.* (internal quotation marks and alterations omitted).

In the instant case, the complaint alleges that Sewell's claim with the Office of the California Labor Commissioner sought paid sick leave under California Labor Code § 245, *et seq*. Compl. ¶ 12 ("Ms. Sewell filed a complaint against Dignity Health with the Labor Commissioner's office claiming that she was denied sick leave pay in 2017 and 2018, purportedly in violation of Cal. Labor Code § 245 et seq. (the 'Act')."). The complaint also repeatedly alleges that the CBA itself does not provide a right to paid sick leave for Sewell. Compl. ¶¶ 23, 24, 30 ("For per diem employees, like Sewell, the Union negotiated alternative wage protection in lieu of receiving benefits, such as paid sick leave."). Thus, as alleged, Sewell's claim is not "founded directly on rights created by" the CBA. *Kobold*, 832 F.3d at 1033.

Notwithstanding the foregoing, Plaintiff argues that the complaint sufficiently pleads preemption under the first *Burnside* factor because the complaint alleges that the CBA is subject to an exemption from the paid sick leave requirements of California Labor Code § 245, *et seq*. Opp'n at 10 (arguing that because the CBA "meets all the requirements of the 245.5(a)(1) exemption," Plaintiff has "pled Section 301 preemption"). Specifically, Plaintiff contends that the CBA is covered by Section 245.5(a)(1) of the California Labor Code. Compl. ¶¶ 17, 18. Because Plaintiff pleads that the Section 245.5(a)(1) exemption applies to Sewell, Plaintiff contends that Sewell's action was not brought under state law, but was brought "purely to vindicate a right or duty created by the CBA itself." *Alaska Airlines Inc. v. Schurke*, 898 F.3d 904, 921 (9th Cir. 2018). Thus, Plaintiff claims that the Sewell Order satisfies the first *Burnside* factor.

California Labor Code Section 245.5(a)(1) dictates that the paid sick leave requirements of California Labor Code § 245, *et seq*., do not extend to:

An employee covered by a valid collective bargaining agreement if the agreement

expressly provides for the wages, hours of work, and working conditions of employees, *and expressly provides for paid sick days or a paid leave or paid time off policy that permits the use of sick days for those employees*, final and binding arbitration of disputes concerning the application of its paid sick days provisions, premium wage rates for all overtime hours worked, and regular hourly rate of pay of not less than 30 percent more than the state minimum wage rate.

Cal. Labor Code § 245.5(a)(1) (emphasis added).

Plaintiff pleads that Sewell falls into this category. This is so, according to Plaintiff, because the CBA provides for "paid time off" and "extended sick leave" to some employees. Compl. ¶¶ 19–21. Plaintiff alleges that these benefits do not extend to per diem employees like Sewell, but Plaintiff contends that the mere fact that the CBA provides the specified benefits to *other* employees is enough to bring the entire CBA within the scope of the exemption. *Id.*

As an initial matter, the Court cannot accept Plaintiff's allegation that the CBA is subject to the Section 245.5(a)(1) exemption merely because the allegation appears in the complaint. Although a court "must take all of the factual allegations in the complaint as true," it is "not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678. Whether the Section 245.5(a)(1) exemption applies to Sewell's claim is a question of law that the Court must analyze based on the facts pleaded in the complaint.

The Court concludes that based on the facts pleaded, the Section 245.5(a)(1) exemption does not apply to Sewell's claim. Section 245.5(a)(1) indicates that in order for a CBA to be covered, the CBA must "expressly provide[] for the wages, hours of work, and working conditions of employees, *and expressly provide[] for paid sick days or a paid leave or paid time off policy that permits the use of sick days for those employees*." Cal. Labor Code § 245.5(a)(1) (emphasis added).

The concluding phrase, "those employees," refers to the employees for whom a CBA "provides for the wages, hours of work, and working conditions." The complaint alleges that in the instant case, this category includes per diem employees who are members of the California Nurses Association labor union, like Sewell. Compl. ¶ 8 ("The CBA governs the wage, hours, and working conditions of Union members."). The complaint also alleges that notwithstanding the fact that the CBA "provides for the wages, hours of work, and working conditions" of per diem

United States District Court
Northern District of California

employees, it does not "expressly provide[] for sick days or a paid leave or paid time off policy that permits the use of sick days for those [per diem] employees." Cal. Labor Code § 245.5(a)(1); Compl. ¶¶ 21, 22. Thus, the Section 245.5(a)(1) exemption does not apply to Sewell's claim.

Plaintiff makes several arguments to the contrary. None is persuasive. First, Plaintiff asserts that "the phrase 'for those employees' only qualifies 'paid time off policy' and does not qualify 'paid sick days' or 'paid leave.'" Opp'n at 19. Under Plaintiff's reading, so long as a CBA provides *some* employee with *some* form of paid sick days or paid leave, all employees subject to the CBA are exempt from California sick leave pay requirements under Section 245.5(a)(1). Such a reading is highly illogical. As Defendants put it, "[i]n [Plaintiff's] view, a CBA that provides paid sick leave to one worker, but expressly states that the other 999 workers in a bargaining unit are entitled to no paid sick leave, the [Section 245.5(a)(1) exemption] applies to all 1,000 workers, leaving all but one without any paid sick leave under the PSL Act and under the CBA." Mot. at 26–27. Indeed, under such a reading, the Section 245.5(a)(1) exemption would swallow the legislative guarantee of paid sick leave.

Plaintiff argues that California state canons of statutory construction support Plaintiff's assertion that "for those employees" only qualifies "paid time off policy." Specifically, Plaintiff claims that "the last antecedent rule" compels Plaintiff's construction of the exemption. Opp'n at 19. Plaintiff cites the Supreme Court of California's decision in *White v. County of Sacramento*, 31 Cal. 3d 676, 680 (1982), as support for this proposition. However, *White* in fact wholly undermines Plaintiff's position.

As the Supreme Court of California explained in *White*, "when several words are followed by a clause which is applicable as much to the first and other words as to the last, the natural construction of the language demands that the clause be read as applicable to all." 31 Cal. at 680–81 (internal quotation marks and alterations omitted). That perfectly describes the language used in Section 245.5(a)(1): "for those employees" is naturally applicable to all of the preceding terms, so "the natural construction of the language demands that the clause be read as applicable to all." *Id.* This conclusion is bolstered by the punctuation of the operative clause, in which the various

Case No. 19-CV-06612-LHK
ORDER GRANTING DEFENDANTS' MOTION TO DISMISS

terms are not separated by commas. *See id.* at 680 ("Evidence that a qualifying phrase is supposed to apply to all antecedents instead of only to the immediately preceding one may be found in the fact that it is separated from the antecedents by a comma.").

Second, Plaintiff claims that two previous cases "have rejected the very interpretation the State advances here." Opp'n at 16. Plaintiff is mistaken. The first case cited by Plaintiff is *Mauia v. Petrochem Insulation, Inc.*, No. 18-CV-01815-MEJ, 2018 WL 4076269 (N.D. Cal., Aug. 27, 2018). In *Mauia*, the court concluded that a CBA fell within the terms of a different California labor law exemption, notwithstanding the argument that the employer had failed to honor the provisions of the CBA in practice. *Id.* at *7. *Mauia* is highly distinguishable because, as discussed in the foregoing, the CBA in the instant case does not fall within the terms of Section 245.5(a)(1).

The second case cited by Plaintiff, *Flowers v. Los Angeles Cnty. Metro. Trans. Auth.*, 43 Cal. App. 4th 66 (2015), is similarly inapposite. In *Flowers*, the California Court of Appeal concluded that a CBA met the terms of a statutory exemption because the CBA provided "premium wage rates for all overtime hours worked," even though the CBA defined "overtime hours worked" differently than California law. *Id.* at 85. Here, by contrast, Plaintiff alleges that the CBA does not afford *any* paid sick leave, as would be required for the exemption to apply. Compl. ¶¶ 23, 24, 30 ("For per diem employees, like Sewell, the Union negotiated alternative wage protection in lieu of receiving benefits, such as paid sick leave."). Thus, *Flowers* is distinguishable.

In sum, and based on the allegations of Plaintiff's complaint, the CBA does not contemplate paid sick leave for per diem employees like Sewell. Moreover, the Section 245.5(a)(1) exemption does not apply to the CBA. Accordingly, the Court concludes that under the first *Burnside* factor, Sewell's claim for paid sick leave is not "founded directly on rights created by a collective-bargaining agreement." *Kobold*, 832 F.3d at 1033 (internal quotation marks and alterations omitted). Thus, Plaintiff has not pleaded that the Sewell Order is subject to Section 301 of the LMRA preemption at the first step of the *Burnside* analysis. The Court now

16

turns to the second step.

### b. The Sewell Order Does Not Satisfy the Second *Burnside* Factor

Plaintiff also argues that the complaint adequately alleges that the Sewell Order is preempted under the second *Burnside* factor. Specifically, Plaintiff asserts that Sewell's claim raises an "active dispute" over the terms of the CBA. Opp'n at 11. By contrast, Defendants assert that Sewell's claim is not dependent upon any interpretation of the CBA, and the Sewell Order is therefore not preempted under the second *Burnside* factor. Mot. at 20. The Court agrees with Defendants. Plaintiff does not plead LMRA preemption under the second *Burnside* factor.

The Ninth Circuit has explained that in order for a claim to fall within the second *Burnside* factor, the claim must be "substantially dependent on analysis of the CBA." *Burnside v. Kiewit Pac. Corp.*, 491 F.3d 1053, 1059 (9th Cir. 2007). This inquiry turns on "whether the claim can be resolved by 'look[ing] to' versus interpreting the CBA. If the latter, the claim is preempted; if the former, it is not." *Id.* at 1060 (quoting *Livadas v. Bradshaw*, 512 U.S. 107, 125 (alteration in original)). The Ninth Circuit has "stressed that, in the context of § 301 complete preemption, the term 'interpret' is defined narrowly—it means something more than 'consider,' 'refer to,' or 'apply.'" *Balcorta v. Twentieth Century–Fox Film Corp.*, 208 F.3d 1102, 1108 (9th Cir. 2000). Hence, at "this second step of the analysis, claims are only preempted to the extent there is an active dispute over the meaning of contract terms." *Curtis v. Irwin Indus., Inc.*, 913 F.3d 1146, 1153 (9th Cir. 2019) (internal quotation marks omitted).

Plaintiff contends that there is indeed "an active dispute over the meaning of contract terms" in the CBA. Specifically, Plaintiff pleads that "[r]esolution of whether a per diem worker, like Ms. Sewell, is entitled to additional sick leave pay, over and above the wage premium such workers already receive pursuant to the CBA, necessarily requires interpretation of the CBA (including at least CBA Local Article 10), past practice, and the bargaining history between the parties to determine: (a) whether the 25% to 40% wage premiums per diem nurses receive includes compensation for sick leave; and (2) [*sic*] whether those wage premiums comply with the Labor Code § 246(b)(3)." Compl. ¶ 30.

17

Plaintiff's conclusory pleadings do not meet the requirements of the second *Burnside* factor. As to the first "dispute," Defendants explain that Defendants do not in fact dispute Plaintiff's contention that "the CBA's per diem wage differential was intended, by the parties to the CBA, to compensate per diem employees for various benefits not provided to them, including paid sick leave." Reply at 8. Both parties agree on the nature, intent, and operation of the wage premiums received by per diem employees like Sewell under the CBA. *Compare* Opp'n at 11 ("The State *disputes* that the wage premium includes compensation for sick leave."), *with* Reply at 8 ("Here, the Labor Commissioner acknowledges that the CBA's per diem wage differential was intended, by the parties to the CBA, to compensate per diem employees for various benefits not provided to them, including paid sick leave. We do not dispute Dignity's assertion that 'per diem employees receive an upfront cash premium per hour worked, instead of receiving actual sick days.'").

As to the second "dispute," Defendants correctly note that it represents a dispute about *California labor law requirements*, not a dispute about any contested terms in the CBA. Reply at 8. As the United States Supreme Court has explained, "when the meaning of contract terms is not the subject of dispute, the bare fact that a collective-bargaining agreement will be consulted in the course of state-law litigation plainly does not require the claim to be extinguished." *Livadas*, 512 U.S. at 124. Hence, although there is a dispute about whether the CBA's "wage premiums comply with the Labor Code § 246(b)(3)," this fact alone is insufficient to satisfy the second *Burnside* factor.

Plaintiff cites *Firestone v. S. Cal. Gas Co.*, 219 F.3d 1063 (9th Cir. 2000), which Plaintiff asserts "is controlling as it likewise involved a case where the parties disputed the meaning and application of a CBA provision." Opp'n at 12. However, *Firestone* does not compel a contrary finding because the dispute in *Firestone* was over *how* overtime would be calculated under a CBA. Indeed, in *Firestone*, "the Ninth Circuit held that the CBA required interpretation, and thus that the claim was preempted, because the parties 'disagree[d] on the meaning of term' in the CBA, specifically, on how to calculate the applicable regular rate." *Peters v. RFI Enters., Inc.*,

18

No. 18-cv-01187-BLF, 2018 WL 3869564, at *6 (N.D. Cal. Aug. 15, 2018). Here, by contrast, there is no disagreement about how to apply the CBA's wage premium for per diem employees. Compl. ¶ 26 (outlining wage premium schedule); Reply at 9 ("[T]here is no need for an interpretation of the CBA here.").

Plaintiff's complaint fails to plead "an active dispute over 'the meaning of contract terms'" of the CBA, such that the second *Burnside* factor is met. *Schurke*, 898 F.3d at 921 (quoting *Livadas*, 512 U.S. at 124). Because Plaintiff fails to plead that the Sewell Order is preempted under either the first or second *Burnside* factor, Plaintiff fails to plead that the Sewell Order is subject to preemption under Section 301 of the LMRA.

Accordingly, the Court GRANTS Defendants' motion to dismiss Plaintiff's claim for declaratory relief that the Sewell Order is preempted by Section 301 of the LMRA. The Court is highly skeptical that Plaintiff can satisfy the *Burnside* factors. Moreover, the Court questions whether Plaintiff is engaged in forum shopping. Nonetheless, the Court cannot say with absolute certainty that granting Plaintiff leave to amend the request for declaratory relief as to LMRA preemption would be futile. Moreover, the Court finds that leave to amend would not cause undue delay or unduly prejudice Defendants, and that Plaintiff has not acted in bad faith. *Leadsinger*, 512 F.3d at 532. Accordingly, the Court GRANTS Plaintiff leave to amend Plaintiff's claim for declaratory relief that the Sewell Order is preempted by Section 301 of the LMRA. The Court now turns to Plaintiff's second and final claim, which arises under 42 U.S.C. § 1983.

### 2. Plaintiff Fails to State a Claim under 42 U.S.C. § 1983.

Plaintiff argues that Defendants unlawfully abridged Plaintiff's rights under the NLRA "to engage in collective bargaining without state interference by issuing the Sewell Order in violation of 42 U.S.C. § 1983." Compl. ¶¶ 33, 40. Defendants respond that the NLRA, the source of the rights Plaintiff seeks to enforce, does not preempt state action in this context, and that Plaintiff therefore cannot bring an NLRA claim under 42 U.S.C. § 1983. Mot. at 21–25. The Court agrees with Defendants.

In *Golden State Transit Corp. v. City of Los Angeles*, the United States Supreme Court

Case No. 19-CV-06612-LHK
ORDER GRANTING DEFENDANTS' MOTION TO DISMISS

1  held that the NLRA "gives [] rights enforceable against governmental interference in an action

2  under § 1983." 493 U.S. 103, 109 (1989). Specifically, the NLRA right that the United States

3  Supreme Court recognized that private parties could bring a *Machinists* preemption challenge

4  under 42 U.S.C. § 1983. *Id.* at 111 ("The *Machinists* rule creates a free zone from which all

5  regulation, 'whether federal or State,' is excluded." (internal quotation marks omitted)). As other

6  courts have recognized, however, "the Supreme Court has not yet recognized other NLRA

7  Supremacy Clause claims as actionable under section 1983." *Associated Builders and*

8  *Contractors, Inc. v. City of Jersey City*, No. 2:14-CV-5445-SDW-SCM, 2017 WL 6030533, at *2

9  (D.N.J. Nov. 16, 2017).

10  In Defendants' motion to dismiss the complaint, Defendants correctly note that the United

11  States Supreme Court has repeatedly held that state laws that govern "minimum substantive labor

12  standards," such as California's guarantee of paid sick leave under California Labor Code § 245,

13  *et seq.*, are not subject to *Machinists* preemption under the NLRA. *See Fort Halifax Packing Co.,*

14  *Inc. v. Coyne*, 482 U.S. 1, 21 (1987) ("It is true that the Maine statute gives employees something

15  for which they otherwise might have to bargain. That is true, however, with regard to any state

16  law that substantively regulates employment conditions."); *Met. Life Ins. Co. v. Mass.*, 471 U.S.

17  724, 754 (1985) ("The evil Congress was addressing [with the NLRA] thus was entirely unrelated

18  to local or federal regulation establishing minimum terms of employment.").

19  Rather than substantively address the foregoing authority, Plaintiff merely states that

20  Plaintiff "does not allege a NLRA preemption claim." Opp'n at 14. However, the only two cases

21  cited by Plaintiff in support of Plaintiff's 42 U.S.C. § 1983 claim in fact alleged *Machinists*

22  preemption. *See Golden State Transit Corp.*, 493 U.S. at 112 (applying "[t]he *Machinists* rule" of

23  the NLRA in 42 U.S.C. § 1983 case); *see also Livadas*, 512 U.S. at 117 n.11 (explaining that case

24  fell within the lineage of "'*Machinists*' line of labor pre-emption cases"). If Plaintiff "does not

25  allege a NLRA preemption claim," Opp'n at 14, then it is entirely unclear what NLRA right

26  Plaintiff asserts under 42 U.S.C. § 1983.

27  The Court GRANTS Defendants' motion to dismiss the complaint as to Plaintiff's 42

28

20

U.S.C. § 1983. Here too, the Court is highly skeptical that amendment would not be futile, and the Court questions whether Plaintiff is engaged in forum shopping. Nonetheless, the Court cannot find with absolute certainty that amendment would be futile. Moreover, the Court finds that granting Plaintiff leave to amend the 42 U.S.C. § 1983 claim would not cause undue delay or unduly prejudice Defendants, and that Plaintiff has not acted in bad faith. *Leadsinger*, 512 F.3d at 532. Accordingly, the Court GRANTS Plaintiff to leave to amend the 42 U.S.C. § 1983 claim.

## IV. CONCLUSION

For the foregoing reasons, the Court GRANTS Defendants' motion to dismiss as to all claims against Defendant DLSE with prejudice. The Court GRANTS Defendants' motion to dismiss as to all claims against Defendant Garcia-Brower with leave to amend.

Should Plaintiff choose to file an amended complaint, Plaintiff must do so within 30 days of the instant Order. Leave to amend is restricted to the defects discussed in this Order and in Defendants' motion to dismiss. Plaintiff may not add new parties or claims or amend other claims without obtaining prior express leave of the Court. Plaintiff is directed to file as an attachment to any amended complaint a redlined complaint comparing the original complaint and the amended complaint.

**IT IS SO ORDERED.**

Dated: March 30, 2020

_Lucy H. Koh_

LUCY H. KOH
United States District Judge